Elizabeth BAYLIS, Appellant,

v.

LOURDES HOSPITAL, INC., William Wheeler, M.D., and Credit Bureau of Paducah, Inc., Appellees.

No. 89–SC–974–DG.

Supreme Court of Kentucky.

March 14, 1991.

Marianne Halicks, Paducah, for appellant.

W. Fletcher McMurry Schrock, G. Kent Price, Kerry D. Smith, McMurry & Livingston, Douglas A. McCann, Paducah, for appellees.

LAMBERT, Justice.

In this medical negligence case, the issue is whether plaintiff's evidence of causation was sufficient to withstand defendants' motions for directed verdict. At the close of plaintiff's evidence in chief, defendants moved for directed verdict and their motions were sustained. The Court of Appeals affirmed.

Appellant sought to prove that she suffered anaphylactic shock as a result of defendants' negligence in administering her the drug Keflex. She contended that her hospital records reflected a prior allergic reaction to Keflex and that at the time it was prescribed for her, she told the nurse who took her medical history that she was allergic to penicillin[1]. According to appellant, on December 19, 1984, she came to the emergency room complaining of stomach problems and with little or no examination or diagnosis, Keflex was prescribed by the doctor. After going home and taking one capsule, appellant collapsed

---

**1.** Evidence was presented that penicillin and Keflex are of the same family of antibiotic drugs and that persons with a known allergy to penicillin should not, except in extraordinary circumstances, be given Keflex.

and was returned to the hospital in a state of shock.

At the close of plaintiff's evidence in chief, the trial court determined that an essential element of proof had been omitted. The trial court held that plaintiff's expert witness, Dr. Saul Boyarsky, had failed to state his opinion that plaintiff's allergic reaction was caused by her ingestion of Keflex. The court said:

> "[T]he ballgame all boils down to one thing, and that is whether or not this Keflex caused the hospitalization and the injury, and somebody has got to say in medical probability, it did, and the parties have to be given the right to cross examination of that expert that says that, either by deposition or by having him here in court."

Affirming the trial court, the Court of Appeals held that Dr. Boyarsky never expressed *his* opinion to a reasonable degree of medical probability that the Keflex caused the anaphylactic shock reaction. The Court of Appeals concluded that plaintiff's expert merely reported the content of the hospital record on the element of causation.

Prior to addressing the dispositive issue, it is necessary to briefly discuss a misconception of law which appears to have contributed to the erroneous rulings. In colloquy with counsel, just prior to granting defendants' motions for directed verdict, the trial court expressed the view that because appellant's medical record could not be cross examined, its admissibility was doubtful or its significance diminished [2].

■ It is now well settled that the medical record of a patient in a hospital is admissible in evidence under the regular business entries exception to the hearsay rule. *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935 (1976). There is no longer any

requirement that "necessity" be shown as was the case in *Whittaker v. Thornberry*, 306 Ky. 830, 209 S.W.2d 498 (1948). This Court has adopted the view found in Wigmore, *Evidence*, § 1707 as follows:

> "There is a Circumstantial Guarantee of Trustworthiness; for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone." See *Buckler v. Commonwealth*, *supra* at 938.

Upon matters properly included therein, medical records are entitled to the same dignity as other forms of evidence produced at trial. *Whittaker v. Thornberry*, *supra*.

This Court has long recognized that the admission of hearsay evidence results in the deprivation of the fundamental right to confront and cross examine witnesses. As such, we have determined that hearsay evidence must possess characteristics or have been made under circumstances which substantially eliminate the possibility of error. *Barnes v. Commonwealth*, Ky., 794 S.W.2d 165 (1990). We have determined that medical records satisfy these requirements. Therefore, the trial court erred in its view that testimonial evidence was necessary to support the medical record.

This cause is distinguishable from our decision in *Young v. J.B. Hunt Transportation, Inc.*, Ky., 781 S.W.2d 503, 508–509 (1989), in which we affirmed the trial court's rejection of a large volume of medical records offered into evidence after the

---

2. "THE COURT: They can't cross examine medical records. You have to cross examine people. You've got to have a doctor that gets up there and says that so they can cross examine him and see whether he's telling the truth about what he concludes as a doctor. You can't cross examine medical records. They've got a right to inquire as to what went into making up a diagnosis, even if it says flat out in there. If that thing said, it's my medical opinion that this patient suffered anaphalaxis as the result of ingesting Keflex, I don't think … it might be admissible to impeach the doctor if he changed his mind or something like that, but you can't cross examine that record. Otherwise, all these cases would be submitted on medical reports. We wouldn't even have to have depositions."

conclusion of the testimony but before defendant had rested. We held that the trial court's rejection of the records at the time and under the circumstances of their proffer amounted to a proper exercise of discretion.

Despite the trial court's view that it was necessary to have the testimony, subject to cross examination, of the physician who recorded his findings on examination, the basis for the ruling on the directed verdict motions appears to be the absence of testimony in terms of medical probability that Keflex caused plaintiff's allergic reaction. This view was accepted by the Court of Appeals, and in this Court, appellees argue that Dr. Boyarsky merely reported the content of the record and failed to adopt the views expressed therein or state his own opinion as to causation.

Appellant's testimony and the medical record discloses that on the day in question, she was seen by Dr. Wheeler who prescribed Keflex for her diverticulitis condition. After taking one Keflex capsule, she collapsed and was returned to the hospital emergency room. Upon arrival, she was found to have no blood pressure, but was awake. Epinephrine was administered and her vital signs returned. Dr. Roberts diagnosed anaphalaxis with cardiovascular collapse, gastric ulcer and probable mitral valve prolapse. Dr. Roberts, in his progress record, stated, "It was felt that the patient had had an anaphylactic reaction to the Keflex."

Prior to giving testimony at trial, appellant's expert, Dr. Boyarsky, testified that he had reviewed the hospital record and read the deposition testimony. A fair interpretation of the whole of his testimony reveals a view that the causation between the anaphylactic shock and the taking of Keflex was obvious. Instead of directly addressing the question of causation, Dr. Boyarsky's testimony dealt largely with appellees' negligence in prescribing this drug to a patient with a known penicillin allergy and a prior reaction to Keflex, and appellees' failure to adequately assess appellant's condition and review its own records.

■ It is beyond dispute that causation is a necessary element of proof in any negligence case. William L. Prosser, *Handbook of the Law of Torts*, 4th ed. (1971). *Johnson v. Vaughn*, Ky., 370 S.W.2d 591 (1963). It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness[3] because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony. *Jarboe v. Harting*, Ky., 397 S.W.2d 775 (1965); *Johnson v. Vaughn, supra*. While evidence of causation must be in terms of probability rather than mere possibility, we have held that substance should prevail over form and that the total meaning, rather than a word-by-word construction, should be the focus of the inquiry. *Walden v. Jones*, Ky., 439 S.W.2d 571 (1968); *Morris v. Hoffman*, Ky. App., 551 S.W.2d 8 (1977). The standard of "totality of the medical testimony" was adopted for use in Workers Compensation cases by the Court of Appeals in *Stauffer Chemical Co. v. Greenwell*, Ky.App., 713 S.W.2d 825 (1986), wherein the Court held that terms such as "distinct possibility" and "high likelihood" went beyond speculation and amounted to substantial evidence of causation, an inquiry not dissimilar to the question before this Court.

---

**3.** As an exception to the general rule, expert testimony is not necessary "where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *Jarboe v. Harting*, Ky., 397 S.W.2d 775, 778 (1965); *Meiman v. Rehabilitation Center, Inc.*, Ky., 444 S.W.2d 78 (1969); *Maggard v. McKelvey*, Ky.App., 627 S.W.2d 44 (1981). Moreover, we have held that the doctrine of *res ipsa loquitur* may be applicable to medical negligence cases if the particular injury is a kind that a jury could reasonably find would not occur in the absence of negligence. *The Jewish Hospital Association of Louisville, Ky., Inc. v. Lewis*, Ky., 442 S.W.2d 299 (1969). Also, in *Johnson v. Vaughn*, Ky., 370 S.W.2d 591, 597 (1963), we held that "circumstantial evidence may be sufficient to prove reasonable probability or proximate cause where the evidence reasonably established a causal connection between the alleged negligence and the injury." *See also Reams v. Stutler*, Ky., 642 S.W.2d 586 (1982).

■ The standard to be applied in ruling upon motions for directed verdict is that every favorable inference which may reasonably be drawn from the evidence should be accorded the party against whom the motion is made. *Johnson v. Vaughn, supra; National Collegiate Athletic Association v. Hornung*, Ky., 754 S.W.2d 855 (1988).

With the foregoing standards and rules of construction in mind, we turn our attention to the testimony which is dispositive. On direct examination and in response to a question which dealt with the proper standard of care, Dr. Boyarsky said:

"My opinion is that a bad mistake was made in giving this lady Keflex."

When asked how he arrived at that opinion, he answered:

"She was allergic to Keflex and she never should have got it. She had been in that same emergency room before with an allergic reaction to Keflex. There is just no excuse for giving a patient in the same emergency room in the same hospital the same drug that made her allergic before, because there is a danger of almost killing her and it almost did."

Appellees argue fervently that this testimony went only to the proper standard of care and that Dr. Boyarsky did not offer an independent opinion as to the cause of the alleged injuries. While the answers given may not have been entirely responsive to the questions asked and the questions themselves may have been inartfully stated, in the testimony above, Dr. Boyarsky stated his view that ingestion of Keflex caused appellant's anaphylactic shock.

Upon careful examination of the record in this case, and with due regard for the principles outlined above, we are unable to accept appellees' contention. From the testimony given and the circumstances surrounding the onset of anaphylactic shock in appellant, a jury could reasonably have found that appellees' negligence was a proximate cause of the condition.

Having determined that the court below erred in affirming the trial court's directed verdict, the judgment is reversed and this cause remanded to the McCracken Circuit Court for trial.

STEPHENS, C.J., and COMBS, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the appropriate standard of appellate review has not been employed in this case.

The basic question is whether the trial judge committed reversible error in directing a verdict in favor of the defendants at the close of Baylis' evidence for failure to prove causation to a reasonable medical probability. A unanimous panel of the Court of Appeals affirmed the decision of the trial judge.

A review of the evidence indicates that Baylis became ill in 1984 and took an antibiotic called "Keflex" which she had left over from an old prescription from her dentist. She suffered a reaction and went to the emergency room where it was determined she was probably allergic to Keflex. A few weeks later, she called the office of Dr. Wheeler concerning her stomach problems and was informed that he was in surgery at the hospital but that if she would go to the emergency room he might be able to see her. Upon her arrival at the emergency room, she was examined and asked if she were allergic to any medication. She replied that she was allergic to penicillin, which was noted in the emergency room records. Following further consultation and X-rays, she was given Phenergan. Dr. Wheeler also prescribed Mylicon and Keflex and left instructions for her to call him.

Baylis left the hospital, obtained her prescriptions, went home and took a dose of Keflex. She had an immediate reaction and was taken by her family back to the emergency room where she was diagnosed as having anaphylactic shock with cardiovascular collapse. Baylis was treated for shock and responded fairly quickly. Following a three-day hospital stay, her final

diagnosis was "anaphylaxis shock with cardiovascular collapse, gastric ulcer, probable mitral valve prolapse, with a history of diverticulosis, hiatus hernia, and hysterectomy." When her hospital bill was not paid, it was turned over to the credit bureau which brought suit to collect. Baylis and her husband filed this action alleging both the hospital and Dr. Wheeler were negligent.

At the conclusion of her evidence, the trial judge directed a verdict in favor of the defendants on the ground that Baylis had not established an essential part of her claim, to-wit: that the taking of Keflex caused the anaphylactic reaction for which she is seeking damages.

The Court of Appeals unanimously affirmed, stating that causation and medical malpractice must be established by expert testimony unless the negligence is so apparent that a layman with general knowledge would have no trouble recognizing it. The panel further observed that the medical testimony must establish that causation is probable and not merely possible. Baylis' expert at trial, Dr. Boyarsky, a lawyer and a board-certified urologist, never stated that the anaphylactic reaction was the result of the ingestion of Keflex.

It is clear that the Court of Appeals panel examined the evidence and unanimously agreed with the trial judge that Baylis' burden of proving causation was not established. It behooves this Court not to substitute its judgment for that of the trial judge. Certainly a reviewing court has the right to consider the sufficiency of the evidence but the majority here has exceeded its traditional limits.

The role of an appellate court in reviewing the granting or denial of a motion for directed verdict in a negligence case is limited to viewing the evidence from a standpoint most favorable to the prevailing party. *Horton v. Union Light Heat & Power Co.*, Ky., 690 S.W.2d 382 (1985).

I would affirm the decision of the Court of Appeals and the circuit court.