NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0300n.06

No. 09-5394

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 14, 2010**

LEONARD GREEN, Clerk

WILLIAM SCOTT WOOLER,      )
      )
   Plaintiff-Appellant,      )
      )
v.      )  ON APPEAL FROM THE UNITED
      )  STATES DISTRICT COURT FOR
HICKMAN COUNTY, KENTUCKY, et al.,      )  THE WESTERN DISTRICT OF
      )  KENTUCKY
   Defendants-Appellees.      )
      )
      )

Before: SUHRHEINRICH, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Plaintiff William Wooler alleges that, while he was incarcerated at the Hickman County Detention Center ("the Jail"), various corrections employees unlawfully exposed him to the bacteria known as Methicillin-resistant Staphylococcus aureus (MRSA) and then mistreated his MRSA infections. Wooler sued Hickman County and three of the Jail employees, asserting Eighth Amendment claims under 42 U.S.C. § 1983 and negligence claims under Kentucky law. The district court granted summary judgment in favor of the defendants on all claims, which Wooler now appeals. We reject his arguments, and affirm.

I.

Wooler's claims are based on his exposure to MRSA, which is an antibiotic-resistant type of staph bacteria. MRSA is spread through person-to-person contact, so crowded living environments, such as prisons, are ideal environments for outbreaks.

Wooler alleges that he became infected with MRSA while incarcerated at the Jail. He was admitted in June 2004, and placed in Cell 147. That cell housed ten inmates, though it was designed for only five, and contained one shower and one toilet.

On September 1, 2004, the Jail received a Kentucky Department of Corrections Memorandum that warned about the dangers of MRSA and instructed Jail staff on how to prevent the spread of MRSA. Defendant Robert Tarver, the Jailer, skimmed the Memo and gave it to defendant Peggy Tarver, who was a Registered Nurse at the Jail (and Robert Tarver's wife). She read the Memo and discussed it with defendant Dr. Bruce Smith, a doctor who provided medical services to the Jail's inmates.

On September 23, 2004, an inmate—whom the parties refer to as "Inmate A" to protect his identity—was admitted to the Jail and placed in Cell 147 with Wooler. At the time, Inmate A had a wound on his leg that, according to Wooler, "looked like a bullet hole" and was draining pus. The Jail's medical staff did not know about Inmate A's wound until October 11, 2004, when other inmates told the staff about it. Dr. Smith diagnosed the wound as a MRSA infection and put bandages on it to contain the drainage. Before sending Inmate A back to Cell 147, Nurse Tarver ordered that his linens be changed, and told him to wash his hands regularly, to use clean towels every time he showered, and not to touch his wound.

Inmate A developed a number of other MRSA infections during November and December 2004. In late November, he developed a particularly serious abscess on his leg. On Thursday, December 2, Dr. Smith performed an "incision and drainage" procedure on the abscess. Inmate A then returned to Cell 147. Over the following weekend, Inmate A needed to change his dressings

-2-

five or six times, which he was unable to do by himself. The guards asked Wooler to help Inmate A. Wooler did so. The Tarvers were unaware of this request and stated in deposition testimony that it violated Jail policy.

On December 7, a guard reported that Wooler might have a staph infection. One of the Jail's nurses examined Wooler and found four scabs on his thigh, which Wooler said he thought were spider bites. None of the scabs were open sores, so he was not treated. Soon thereafter, Wooler developed additional skin problems. On January 18, 2005, Dr. Smith examined Wooler and treated him for "several skin infections—old and new."

That same day, Nurse Tarver took additional precautionary measures: every cell in the Jail was cleaned; the infected inmates in Cell 147 were quarantined; each inmate was given anti-bacterial soap and required to shower; and Nurse Tarver personally checked each inmate for infections and ensured that each inmate read a flyer about MRSA.

Those precautions stopped the spread of MRSA to other inmates. Between March and September 2005, however, Wooler sought treatment for approximately six different staph infections. Each time, Dr. Smith examined Wooler and prescribed antibiotics. Dr. Smith never took a culture of any of Wooler's wounds, so Wooler's infections were never officially confirmed as MRSA, although Dr. Smith testified that he assumed they were.

Wooler was released from the Jail in September 2005. He developed additional infections, and he sought treatment outside the Jail. Wooler's new physician performed a culture, which confirmed that Wooler had MRSA.

Wooler thereafter filed suit against Hickman County, Jailer Tarver, Nurse Tarver, and Dr. Smith. He alleged that they violated the Eighth Amendment by exposing him to MRSA and by improperly treating his MRSA infections, and that their actions were negligent under Kentucky state law. The district court granted summary judgment in favor of the defendants on all of Wooler's claims.

Wooler now appeals the entry of summary judgment on his claims against Jailer Tarver, Nurse Tarver, and Dr. Smith.

## II.

We review the district court's grant of summary judgment de novo. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56(c)(2). A genuine issue of material facts exists only when there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A defendant is entitled to summary judgment if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.

Wooler first challenges the grant of summary judgment on his claim that the defendants violated the Eighth Amendment by placing him in a cell with Inmate A. An inmate alleging an Eighth Amendment claim against a prison official must prove two elements: first, that the official's alleged mistreatment was "objectively" serious; and second, that the official had a "subjectively"

culpable state of mind. To show objectively serious mistreatment, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective element requires proof that the official was deliberately indifferent to the mistreatment: "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

A.

Here, the defendants concede for purposes of this appeal that Wooler's placement in the same overcrowded cell as Inmate A constituted objectively serious mistreatment. Wooler has therefore satisfied the objective element. Each defendant contests the subjective element.

The defendants did not know that Inmate A was infected with MRSA until October 11, 2004. Wooler argues that they are liable for their conduct before that date, however, because the KDOC Memo made them aware of a risk of MRSA infection among inmates. But that risk is too generalized to be substantial as to Wooler specifically. *See Oliver v. Bucks County Corr. Facility*, 181 F. App'x 287 (3d Cir. 2006) (holding that an inmate who proved he was "at *some* risk of catching MRSA" had not proved that he was subject to a substantial risk of serious harm (emphasis in original)). The record therefore does not support a finding that any of the defendants knew, prior to October 11, that Wooler faced a substantial risk of serious harm from sharing a cell with Inmate A.

The same is true for after October 11. Dr. Smith did not even know that Wooler shared a cell with Inmate A, so there is no basis for finding him liable on that ground. Nor is there for Jailer Tarver; although he knew that Inmate A shared a cell with Wooler, he did not know that Inmate A was contagious. Moreover, Jailer Tarver is not liable as a supervisor of others at the Jail. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (stating that supervisory liability applies only if "the official either encouraged or in some way directly participated" in the unconstitutional conduct).

Wooler's exposure claim against Nurse Tarver presents a closer question. She knew both that Inmate A was contagious and that he shared a cell with Wooler. Thus, a reasonable jury could infer that Nurse Tarver knew that Inmate A posed *some* risk to Wooler. But Wooler must prove that she knew the risk was excessive and that she chose to disregard it.

The record here would not allow a reasonable jury to make that finding. As an initial matter, on January 18, 2005, Nurse Tarver took a number of precautions in response to MRSA; she cleaned every cell, quarantined the infected inmates, and distributed information about MRSA. No reasonable jury could conclude that those actions constituted deliberate indifference.

Wooler focuses instead on the time period between October 11, 2004 and January 18, 2005. But Wooler's evidence does not support a finding of conscious disregard. As soon as Nurse Tarver learned of Inmate A's infection, she investigated the situation and took precautions in response. She contacted the local health department on October 11, but they dismissed her concerns about a MRSA outbreak. Nurse Tarver nevertheless ordered that Inmate A's linens be changed, and gave him instructions designed to prevent the spread of MRSA. These actions, at least on their face, show that

Nurse Tarver did not consciously disregard a risk that she knew was excessive. *See Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (en banc) (granting summary judgment to prison officials because "[t]here is nothing to suggest that the [officials] were . . . doing less than their training indicated was necessary"); *see also Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001) (stating that deliberate indifference requires "knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk" (internal quotation marks omitted)).

Wooler asserts that, despite this evidence, a reasonable jury could conclude that Nurse Tarver was deliberately indifferent because she failed to take additional precautions that were readily available to her. But Wooler does not have any evidence showing that Nurse Tarver did, in fact, have other options. He says that Nurse Tarver should have placed Inmate A in isolation, but he has not introduced any evidence showing that isolation was a feasible option at the Jail. He also asserts that Nurse Tarver should have warned him about Inmate A's MRSA infection, but Nurse Tarver testified that medical-privacy laws prevented her from doing so. Thus, a reasonable jury could not conclude that Nurse Tarver ignored other precautions readily available to her.

Wooler's evidence shows that Nurse Tarver was, at most, negligent in implementing measures to reduce the risk of MRSA infections. Her consistent efforts to reduce that risk, however, preclude a finding of deliberate indifference. Nurse Tarver is entitled to summary judgment.

B.

Wooler next challenges the grant of summary judgment on his Eighth Amendment claim that Dr. Smith improperly treated his MRSA infections. Again, Wooler must prove that the alleged

mistreatment was objectively serious, and that Dr. Smith was deliberately indifferent to the mistreatment. Wooler contends that Dr. Smith's treatment was inadequate in two ways.

First, Wooler says that Dr. Smith mistreated him by not culturing his wounds to confirm that he had MRSA. But Dr. Smith testified that he assumed Wooler had MRSA, and that confirmation of that fact would not have changed his treatment in the least. The record before us, then, affords no basis for a jury to find that his failure to culture was serious mistreatment.

Second, Wooler contends that Dr. Smith twice prescribed an antibiotic known as Keflex—which is ineffective against MRSA—to treat some of Wooler's abscesses. Dr. Smith explained his decision to prescribe Keflex by stating that "the treatment even for MRSA is common antibiotics," and that he "use[d] Keflex on some . . . patients in the jail who had abscesses, and they got better." These statements reflect a good-faith belief that Keflex was appropriate treatment for Wooler's infections. Indeed, Wooler admits that each time Dr. Smith prescribed Keflex, his infections went away. There is no basis, therefore, for a jury to find that the Keflex prescriptions amounted to deliberate mistreatment.

IV.

Wooler next challenges the district court's grant of summary judgment on his state-law negligence claims against the defendants. Wooler alleges that all three defendants negligently exposed him to MRSA—both by failing to detect Inmate A's infection before October 11, and by failing to take sufficient precautions thereafter. Wooler also asserts a medical-malpractice claim against Dr. Smith. The district court granted summary judgment in favor of the defendants on all of the claims.

Wooler argues that Dr. Smith was not entitled to summary judgment on his medical-malpractice claim. Kentucky law requires expert evidence to survive summary judgment on a medical-malpractice claim. *See Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006). Here, Wooler relies on an expert report discussing the adequacy of the Jail's efforts to prevent the spread of MRSA. But that report says nothing about the medical treatment that Wooler received at the Jail. Dr. Smith is therefore entitled to summary judgment on the medical-malpractice claim.

Wooler also seeks to revive his remaining negligence claims. To establish a negligence claim under Kentucky law, a plaintiff must establish that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). The district court concluded that Wooler failed to create a genuine issue as to causation. Again, Kentucky law generally requires expert testimony to prove causation in cases involving medical claims. *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991).

Wooler contends that his expert testimony from Dr. Clark is sufficient to avoid summary judgment on causation grounds. We are unpersuaded. For one thing, Dr. Clark's testimony was equivocal at best. Although he initially testified that the Tarvers may have caused Wooler's MRSA infections, he later backed off that statement. Specifically, he said that he was "not sure" how Wooler obtained MRSA, and agreed that "it is logical and may be correct" to say that "it is absolutely impossible to tell if [Wooler] contracted MRSA in the jail." Thus, Dr. Clark's testimony is inconclusive on its own terms.

Moreover, Dr. Clark's opinion is also unreliable. He expressly assumed that Wooler had not engaged in any "high-risk activities" that could have caused the MRSA infections. But that assumption was false, because Wooler received jailhouse tattoos from a homemade tattoo gun that he shared with Inmate A—an activity that Dr. Clark admitted would increase the risk of obtaining MRSA. Thus, Dr. Clark's opinion is based on a false premise; he failed to consider whether Wooler's own actions caused the MRSA infections.

At bottom, Dr. Clark's testimony is inconclusive and unreliable. Such evidence, by itself, would not allow a reasonable jury to conclude that the defendants' negligence caused Wooler's MRSA infections. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy" (internal quotation marks and modifications omitted)). The defendants are therefore entitled to summary judgment on the negligence claims.

The district court's judgment is affirmed.