NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0411n.06

No. 16-5822

FILED
Jul 14, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHEILA RUNKLE, Administratrix of Estate of Robert Earl Runkle, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| RONALD FLEMING, | ) ) | OPINION |
| Defendant-Appellee. | ) ) | |

BEFORE: MOORE, STRANCH, and DONALD, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** This case concerns the medical care that Plaintiff Sheila Runkle's deceased husband, Robert Earl Runkle received from Defendant Dr. Ronald Fleming while Mr. Runkle was incarcerated. The district court granted summary judgment to Dr. Fleming on Ms. Runkle's medical negligence claim, finding that the Plaintiff's expert witness provided insufficient evidence of causation. Upon review, we **AFFIRM** the decision of the district court.

## I. BACKGROUND

Mr. Runkle was diagnosed with small bowel cancer in July of 2003 while incarcerated at the Western Kentucky Correctional Complex (WKCC). He underwent surgery to remove a mass and partially resect his intestine. Runkle's cancer was determined to be Stage IV, with a 4% chance of surviving for five years. He was transferred to Kentucky State Reformatory (KSR) for

follow-up chemotherapy treatments, and was discharged to WKCC in the summer of 2004 on a specification that he receive yearly colonoscopies. Mr. Runkle received his annual colonoscopy in June of 2005. On March 27, 2006, he was transferred to the Little Sandy Correctional Complex (LSCC), and on May 10, he had a patient visit with Dr. Fleming, a University of Kentucky employee who was working as a prison doctor. Dr. Fleming testified that he put in a request for Mr. Runkle to receive laboratory tests and a colonoscopy, but it was denied. Dr. Fleming averred that the reviewing authority had denied the tests and colonoscopy; however, two nurses contradict this claim and it is unsupported by documentation.

Mr. Runkle saw Dr. Fleming on July 26, 2006, after he complained of vertigo. Dr. Fleming testified that he told Mr. Runkle his colonoscopy had been denied, and he would need to return Hemoccult cards[1] that tested positive for blood or complain of pain or rectal bleeding to be approved for a colonoscopy. This is also not reflected in medical records. On September 6, Mr. Runkle reported to sick call, complaining of sharp pains in his stomach and rectal area, blood in his stool, and that he missed his yearly colonoscopy. Two days later, his Hemoccult cards tested positive for blood. Dr. Fleming did not see Mr. Runkle, but requested a colonoscopy and esophagogastroduodenoscopy. The colonoscopy was performed on October 10, and the attending doctor discovered a suspicious mass in Mr. Runkle's bowel.

Dr. Fleming issued a special order to the Kentucky Department of Corrections, requesting urgent transfer based on the mass and Mr. Runkle's previous history of colon cancer.[2] The request was granted, and Mr. Runkle was transferred to the KSR on October 18. The mass was determined to be benign, but the doctor's note stated that "[i]n the event these biopsies would not show malignancy, I would have the procedure repeated as soon as possible. I am highly

---

[1] A Hemoccult test is used to reveal invisible blood in the stool.

[2] Fleming frequently referred to Runkle's small bowel cancer as colon cancer.

suspicious of a recurrence of tumor." The scan was not performed until December 27, and it revealed two cancerous masses. An exploratory surgery was performed on February 26, 2007 and the resulting diagnosis was small bowel cancer with metastatic disease to the pelvis and sigmoid colon, determined to be terminal. Following surgery, Mr. Runkle underwent chemotherapy treatments beginning in the summer of 2007. He was granted medical parole on November 30, 2007, and passed away in June of 2008.

Sheila Runkle, Mr. Runkle's wife[3] and the Administratrix of his Estate, originally filed this action in 2007. After her state law claims were dismissed, she refiled in 2011, alleging violations of the state statutory right to medical care, the tort of outrage, and medical negligence. The district court granted summary judgment on all three claims, but this court reversed as to the medical negligence claim, finding that it was not barred by the statute of limitations. After remand, the district court granted Dr. Fleming's motion for summary judgment on the medical negligence claim, and this appeal followed. Ms. Runkle now argues that the district court erred in finding that she did not present sufficient evidence of causation.

## II. ANALYSIS

Ms. Runkle alleges that Dr. Fleming's negligence caused the loss of earlier palliative care for Runkle, and she produced Dr. Charles Winkler as an expert witness. The only contested issue on appeal is whether the Plaintiff provided sufficient evidence of causation.

We review the denial of summary judgment de novo. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The panel must view all evidence, and

---

[3] The district court mistakenly referred to Sheila Runkle as Robert Runkle's mother.

draw all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A plaintiff bringing a medical negligence claim in Kentucky must establish three elements: breach, causation, and injury. *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). Under Kentucky law, medical expert testimony is generally required to establish causation. *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) ("It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony." (footnote omitted)). Medical testimony must be stated within a reasonable degree of medical probability. *Id.* However, "substance should prevail over form and . . . the total meaning, rather than a word-by-word construction, should be the focus of the inquiry." *Id.*

Ms. Runkle's expert witness, Dr. Winkler, was asked on cross examination whether he could testify to a reasonable degree of medical probability that Dr. Fleming's negligence caused Mr. Runkle to suffer a loss of palliative care:

> Q: But can you state within a reasonable degree of medical probability, that an earlier diagnosis would have changed Mr. Runkle's palliative care?
> A: Ponder on that question a moment.
> . . .
> Q: It's possible, but it's not probable, Doctor, is that fair to say?
> A: So what type of confidence intervals do you want me to put around this?
> Q: 51 percent, Doctor.
> A: 51 percent?
> Q: Is it 51 percent likely that the palliation would have helped Mr. Runkle if it occurred earlier? MR. OGDEN: Objection to the form of the question. That's not—that's not the definition. The definition is to a reasonable degree of probability.
> Q: You can answer, Dr. Winkler.
> A: Yeah. I think in a degree of medical probability, it's less than 50 percent, clearly.

Q: And that's unfortunate—it's unfortunate, but that's just the disease process itself, right, Doctor?
A: It is. Can't change it.

(R. 127-2, at PageID# 1599-1601). Winkler was also asked about the delay in Runkle's receiving palliative care on direct examination.

Q: And do you have an opinion as to the consequence to Mr. Runkle of what you just testified to [the alleged breach of the standard of care by Dr. Fleming]?
A: Well, I think the delay in his—the delay in finding these out, with the repeated request for medical care allowed him to undergo symptoms that, possibly, he wouldn't have had if he had had intervention earlier. Maybe there's—the possibility of some form of treatment that would have lessened these symptoms would have been possible for him.

(*Id*. at PageID# 1593-94).

Ms. Runkle's expert was not able to satisfy the standard under Kentucky law governing the probability of causation. On appeal, Ms. Runkle argues that Dr. Winkler's testimony, taken in totality, meets the evidentiary standard. She points to other portions of his testimony in support, including the agreement at the beginning of his testimony that he would give all opinions to a reasonable degree of medical probability. Dr. Winkler also read the following opinion from his 2009 report: "If this patient had been monitored with CEA determination, stool for occult blood, rectal examination and follow-up colonoscopies at shorter intervals, his recurrence would have been diagnosed at an earlier point in time and he could have received palliative therapy, which may have reduced his morbidity from the disease." Although it is true under Kentucky law that substance and total meaning should prevail over form, *Baylis*, 805 S.W.2d at 124, Winkler's testimony still demonstrated that he was unable to provide evidence that Runkle's symptoms of pain and suffering probably, not possibly, would have been alleviated by earlier palliative care.

The Plaintiff also argues that Dr. Vivek Sharma's medical oncology note, when considered along with Winkler's testimony, provides substantial causation evidence. The note, dated October 1, 2007, states that Mr. Runkle had a good response clinically from being on chemotherapy, and reported significant improvement in his clinical status and symptoms. This evidence still does not show that Mr. Runkle would have received additional benefits had chemotherapy been provided earlier. It does appear from the record that there were several long and problematic delays in Dr. Fleming's provision of medical care to Mr. Runkle following his cancer diagnosis. However, the Plaintiff has not satisfied the probability requirement that Kentucky law deems necessary to support a medical negligence claim. Under Kentucky law, summary judgment was properly granted.

## III.  CONCLUSION

Accordingly, we **AFFIRM** the district court's grant of summary judgment.