**C. A. MORRIS, M. D., Appellant,**

v.

**Bonita HOFFMAN, Appellee.**

Court of Appeals of Kentucky.

March 4, 1977.

Rehearing Denied April 8, 1977.

Discretionary Review Denied June 8, 1977.

Frank V. Benton, III, Benton, Benton & Luedeke, Newport, for appellant.

Gary L. Gardner, Eubanks, Gardner & Lorenz, Louisville, for appellee.

Before WHITE, HOGGE and PARK, JJ.

WHITE, Judge.

This appeal arises out of a medical malpractice action when one and one-half cc's of procaine penicillin were injected into plaintiff's left buttock by the defendant. A jury found for the plaintiff in the amount of $69,222.90, and the defendant appeals.

At the time of trial appellant was a seventy-nine year old physician involved in general practice in Covington, Kentucky. The appellee is a thirty-one year old female of slight build. During the month of February, 1972, she visited the appellant's office on several occasions and received a total of seventeen injections of various medications. All of these injections were given in either her left or right buttock. The last injection was administered February 26, 1972, in her left buttock while she was seated on a stool. Appellee testified that she experienced immediate pain in her left leg and hip upon insertion of the needle. When she complained the next day of pain in her inflamed left buttock, she testified the defendant said, "I probably hit a small blood vessel and started it hemorrhaging. Sometimes they do that. Get in bed and keep a hot water bottle to your hip."

Appellee testified that again on February 28, 1972, appellant told her, "I hit a small blood vessel. It happens occasionally. You hit a small blood vessel and it starts hemorrhaging and they react that way. Go home and continue the hot water bottle on your hip." Appellant's medical records of February 28, 1972, substantiate appellee's complaint of inflammation of the left buttock in these words: "L. Hip, bursting, swollen, last shot, from last shot."

The appellee was hospitalized on March 2, 1972, and was placed under the care of Dr. Vernon Lee, a surgeon. She remained in the hospital ninety-two days and Dr. Lee performed four operations on her left buttock to remove five to six centimeters in thickness of necrotic tissue and slough.

 The question before us on this appeal is: was there sufficient evidence for the court below to submit to the jury whether or not the appellant's breach of the standard of care, if any, was the proximate cause of appellee's injuries? Appellee's burden of proof at the trial is greater than merely proving a negligent act followed by injury. There must be proof that the negligent act was the proximate cause of the injury. Negligence in medical malpractice cases must be established by expert testimony unless negligence and injurious results are so apparent that a layman with general knowledge would have no difficulty recognizing it. *Johnson v. Vaughn*, Ky., 370 S.W.2d 591 (1963). As for proximate cause, it has been held that because of the difficulty in proving causation in malpractice cases, circumstantial evidence may in some cases be sufficient. *Johnson v. Vaughn, supra.* However, the rule is that ordinarily expert evidence is necessary to support the conclusion of causation in malpractice actions· and the medical testimony must be that the causation is probable and not merely possible. *Jarboe v. Harting*, Ky., 397 S.W.2d 775 (1965).

So that we may more intelligently test the two principal issues, viz: negligence, if any, and proximate cause; we will examine each issue individually in the light of the testimony as presented here and see if there was sufficient expert evidence for the judge to submit the case to the jury on both issues.

### Standard of Care

 In order to define those areas of the buttocks where injections are normally given, each buttock is divided into quadrants. All the expert witnesses, including the appellant, agreed that the upper outer quadrant (quadrant 2) is the site of proper choice. This area is preferred because injections in any of the other quadrants can cause damage to the sciatic nerve or to the gluteal blood vessels. Appellee contends that the last injection was given in the upper inner quadrant (quadrant 1) of her left buttock and she pointed out the exact location to both the jury and the judge. Appellant testified that the injection was given in the upper outer quadrant (quadrant 2).

The appellant, Dr. C. A. Morris, testified as follows at T.E. 143–144 when asked as to the location of the injury:

Q. 299. Will you refer to plaintiff's Exhibit 4 in conjunction with Plaintiff's Exhibit 5 and tell us where the area of injury lies as represented by the photo-

graph and as compared to the drawing of Plaintiff's Exhibit 5, in which quadrant?

. . . . .

A. I would answer that, Mr. Gardner and your honor, in saying that most of this area here is where this . . . would be in the internal of quadrant number one, the majority is in this quadrant here, in the quadrant number one.

Dr. A. John Anlyan, testified by deposition as plaintiff's expert medical witness. In response to a hypothetical question, his answer was as follows (Deposition at 15, 16):

. . . [D]o you now have an opinion as to whether or not the manner of injection and the site selection for this injection would be consistent with good medical practice and within the realm of the standard of care that this physician owed this hypothetical patient?

. . . . .

A. by "the manner of injection," I gather you mean while the patient was sitting up?

Q. Yes, Doctor.

A. I feel that that is improper. As to the site of injection, again I repeat that this black eschar covers a wide area of the left buttock, and it is difficult for me to pinpoint the exact point of entry of a needle in this area.

It is probably valid, however, that the injection occurred at the center of this eschar, which would place this injection, as I stated before, in the upper medial quadrant of the left buttock.

Q. Doctor, would the selection of that site, if in fact that was the site of injection, be consistent with good medical practice and within the realm of the standard of care that this physician owed this hypothetical patient?

A. No.

Dr. James F. Siles, one of appellant's expert witnesses, testified as follows on cross-examination (T.E. at 194–195):

Q. 12. Is it not also true, there is a profusion of arteries and veins in that quadrant number one in the area of the sciatic nerve?

A. Yes, sir.

Q. 13. And is it not also true that one of the reasons why you don't give an injection in quadrant number one, which would be in the upper inner quadrant of the left buttock area, in addition to not irritating or hitting the sciatic nerve is because of the possible penetration of the injected substance in the veins and arteries of that area?

A. That is true.

Q. 14. So can we conclude, Doctor, from this and based on your experience and training in the field of medicine that to inject procaine penicillin in the area of quadrant number one would not be consistent with good medical practice in your opinion?

A. Yes, sir, that is true.

Q. 15. And it would be a deviation from the standard of medical care to make such an injection for the reasons that we have just gone over?

A. I would think so, yes.

We conclude from this evidence that a jury could reasonably believe the appellee's testimony as to the exact location of the injection. When coupled with Dr. Anlyan's and Dr. Siles' expert testimony as to a breach of the standard of care, the jury could find the defendant negligent. There was no error by the trial court in submitting this issue to the jury.

*Proximate Cause*

Plaintiff's expert witness, Dr. Anlyan, testified in response to a hypothetical question regarding the cause of the injury as follows (Deposition at 10–11):

THE WITNESS: I believe the pictures shown to me of this patient's condition are due to the injection of foreign material into this area. This could be due to irritative and caustic substance injected from without, or a infected substance introduced, or a hematoma caused by the injection which subsequently created this slough of this area.

Q. What is a hematoma, Doctor?

A. A hematoma is a blood clot.

Later, at pages 22–23 of his deposition, Dr. Anlyan elaborates:

Q. And the hematoma caused by injection: How does that occur? You hit a small vein, something of that sort?

A. Either a vein or an artery.

Q. Or an artery. And that causes localized bleeding?

A. It causes bleeding.

At page 28 of his deposition, Dr. Anlyan responds to this question:

Q. Doctor, in your opinion, within the realm of medical probability, could Mrs. Hoffman's condition have been caused by the injection of the foreign substance and in this instance, penicillin, into an artery or vein?

A. It could have.

On page 15 of his deposition, Dr. Anlyan was asked a question incorporating the plaintiff's testimony as to pain she felt in her left hip and throughout her leg:

Q. Now, based upon those further facts, Doctor, would you continue.

A. From the facts enumerated, it seems that there was sciatic nerve irritation at the time of injection.

One of appellant's expert witnesses, Dr. Roy J. Moser, was asked the following question (T.E. at 216):

Q. 12. What if an injection of procaine penicillin . . . I ask you to assume these facts . . . an injection of procaine penicillin is given in quadrant number one and an artery or vein is penetrated and the procaine penicillin along with the blood that is escaping from the vein or artery permeates out into the tissue around quadrant number one and causes inflammation and swelling and then dry heat is applied in constant quantities, what would you expect, Doctor?

A. Well, I would expect . . . as I mentioned, dry heat to an inflamed area can intensify the destruction of the tissue. That is what I would expect, destruction of surface tissue, perhaps in addition to the deeper tissue destruction. I don't think deeper tissues would be affected, but just the surface skin and maybe immediately under the skin. These areas could be affected adversely.

The appellant, Dr. C. A. Morris, was asked what would happen if penicillin was injected into a vein (T.E. at 114):

Q. 188. What is the problem when it goes in a vein, Doctor? What is the difference?

A. The vein . . . no, penicillin shouldn't be injected in the vein.

Q. 189. What will happen if it is, Doctor?

A. It could form an abscess.

■ In examining this expert testimony as to proximate cause, we should remember that while medical-opinion evidence must be founded on probability and not on mere possibility or speculation, the realities of the problem of semantics must be taken into account. Therefore, substance should prevail over form, and the expert testimony should be examined in its total meaning, rather than word-by-word. *Young v. Davidson*, Ky., 463 S.W.2d 924 (1971).

■ Dr. Anlyan's testimony was that Bonita Hoffman's condition was caused by an injection of a foreign substance such as procaine penicillin, into the area. No allegations were made, and no evidence was introduced, that the injury was the result of an irritative and caustic substance, or an infected substance.

The only allegations made were that Dr. Morris had injected procaine penicillin into a vein or an artery, and thereby caused the injury. When Dr. Anlyan's testimony, considered as a whole, that the condition was caused by a hematoma after injection, is coupled with the defendant's admission that, "I hit a small blood vessel.", there was sufficient expert testimony as to proximate cause.

When buttressed by the above testimony of Dr. Roy J. Moser and the appellant, we conclude that this issue was likewise properly submitted to the jury.

The judgment is affirmed.

All concur.