**Melissa JACKSON and Bruce Jackson, Appellants**

v.

**Mehdi GHAYOUMI, D.C.; and Dixie Chiropractic Office, PSC d/b/a Alliance Chiropractic Of Louisville, Appellees.**

No. 2011–CA–002017–MR.

Court of Appeals of Kentucky.

Dec. 14, 2012.

Rehearing Denied Feb. 20, 2013.

Discretionary Review Denied by Supreme Court Feb. 12, 2014.

William D. Nefzger, John A. Bahe, Jr., Louisville, KY, for appellant.

David S. Strite, Benjamin J. Weigel, Louisville, KY, for appellees.

Before COMBS, LAMBERT, and NICKELL, Judges.

## OPINION

LAMBERT, Judge:

Melissa and Bruce Jackson appeal from the Jefferson Circuit Court's entry of summary judgment in favor of the appellees, Mehdi Ghayoumi, D.C., and Dixie Chiropractic Office, PSC d/b/a Alliance Chiropractic of Louisville. After a careful review of the record, we affirm the trial court's entry of summary judgment and its order excluding the testimony of the Jacksons' proposed expert.

Melissa and Bruce Jackson, the appellants herein, sued Mehdi Ghayoumi, a Louisville chiropractor, for malpractice in 2007. The Jacksons claim that Ghayoumi deviated from the applicable standard of care by performing electrical stimulation treatment modalities on Melissa's neck. The Jacksons claim that this treatment caused Melissa to spontaneously miscarry her pregnancy at six weeks. During discovery, the Jacksons disclosed Dr. David M. Priver as an expert witness in support of the causation aspect of their claim.[1] During his deposition, Dr. Priver disclosed he had no knowledge whatsoever regarding the delivery of electrical stimulation to the human body. Dr. Priver also disclaimed any knowledge regarding how electricity is conducted in the human body, and, most importantly, how electrical stimulation delivered to Melissa's neck in this case caused her alleged injuries.

Ghayoumi moved the trial court to exclude or limit Dr. Priver's testimony under Kentucky Rules of Evidence (KRE) 702, KRE 403, and the legal principles announced in several Kentucky cases which interpret the Daubert[2] standard established by the United States Supreme Court. That motion was briefed, and the trial court conducted a Daubert hearing as part of a pretrial conference on May 27, 2011. During that hearing, the trial court heard argument regarding the relationship between the basis for Dr. Priver's testimony and the legal principles involved in determining whether his testimony should be admissible.

Dr. Priver's deposition testimony indicated that he had no knowledge regarding how electricity is transmitted to the human body through electrical stimulation devices. His testimony was based solely upon his review of the instructional manuals for the two electrical stimulation machines in Ghayoumi's office, neither of which mentioned if, and how, interferential electrical current delivered to the neck can cause a miscarriage. Dr. Priver stated that he had never performed interferential

---

1. Throughout the Jacksons' brief, Dr. Priver is referred to as "Daniel" M. Priver. However, both the Jacksons' Kentucky Rules of Civil Procedure (CR) 26.02 expert witness disclosure and Dr. Priver's deposition revealed that his name is, in fact, "David" M. Priver. We refer to him as "David" because that is the physician's name that was before the circuit court.

2. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

electrical current stimulation, nor had he read any materials other than the instruction manual for the two machines. Rather, Dr. Priver based his conclusion that the stimulation caused the miscarriage on the alleged temporal connection between the chiropractic treatment and Melissa's emergency room visit during which she sought treatment for the miscarriage.

In light of Dr. Priver's testimony and the record at that point, the trial court concluded that Dr. Priver could not testify as an expert, concluding that the basis of his opinions lacked reliability and were so speculative that they were irrelevant. The trial court entered an order on June 15, 2011, excluding Dr. Priver's testimony in its entirety.

Because of a previous order entered on November 29, 2010, preventing the Jacksons from disclosing any more expert witnesses, Ghayoumi then moved the trial court to enter summary judgment on the basis that the Jacksons could not establish a *prima facie* case of malpractice against him. In response, the Jacksons argued that they were still entitled to present their case without a causation expert. The Jacksons reasoned that the jury could conclude that the miscarriage was within the province of medical complications that could be understood by a lay person without the aid of expert testimony. The trial court disagreed, and it entered summary judgment in favor of Ghayoumi on July 20, 2011. The Jacksons filed a motion to alter, amend, or vacate the entry of summary judgment, but after a hearing, the trial court denied that motion. This appeal now follows.

The Jacksons argue that the trial court's decision to exclude Dr. Priver's testimony was an abuse of discretion. In the alternative, the Jacksons argue that even if the testimony was properly excluded, Ghayoumi was not entitled to summary judgment because a material issue of fact existed.

■■■ In reviewing the exclusion of expert witness testimony, this Court applies an abuse of discretion standard. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky.2000). In Kentucky, the test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Id.* at 581. When analyzing a trial court's decision to exclude testimony under KRE 702, this Court applies a two-tiered standard of review. First, the trial court's findings of fact regarding the reliability of Dr. Priver's opinions should be disturbed only if they are clearly erroneous. *Miller v. Eldridge*, 146 S.W.3d 909, 914–15 (Ky.2004). *See also* Kentucky Rules of Civil Procedure (CR) 52.01. This Court is then tasked to determine whether the trial court's decision to exclude Dr. Priver's testimony as unreliable amounts to an abuse of discretion. Under KRE 702, the trial court's decision in this vein addresses the relevance of the proposed testimony, as outlined by the non-exhaustive factors of *Daubert.*

■■■ We agree with Ghayoumi that the trial court neither committed clear error in its findings of fact, nor did it abuse its discretion in applying those facts to the established law. The trial court acts as a gatekeeper regarding scientific testimony, only admitting evidence that is scientifically reliable and relevant to the case before it. *Miller v. Eldridge*, 146 S.W.3d 909 (Ky.2004). KRE 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

The trial judge's task is thus to determine whether the expert is proposing to testify to scientific, technical or otherwise specialized knowledge that will assist the trier of fact in understanding or determining a fact in dispute. Trial courts are asked to exclude unreliable scientific or technical evidence. *Miller*, 146 S.W.3d at 913. This inquiry requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 913–14 (internal citations omitted).

■ We agree with the Jacksons that courts "may consider one or more or all of the factors mentioned in *Daubert,* or even other relevant factors, in determining the admissibility of expert testimony." *Toyota Motor Corp. v. Gregory,* 136 S.W.3d 35, 40 (Ky.2004) (internal citation omitted). The test of reliability is flexible and courts do not have to rely exclusively on the factors enumerated in *Daubert. Id.*

■ Applying this legal analysis to the facts of the instant case, we agree with Ghayoumi that the trial court properly excluded Dr. Priver's testimony. The trial court's finding that Dr. Priver's opinions were just that, opinions, that could not be scientifically tested or verified was supported by substantial evidence and was not clearly erroneous. Dr. Priver admitted that he does not understand and has no knowledge of electrical stimulation. Further, he denied knowledge of the machines at issue in this case, denied knowledge of the different types of currents and frequencies associated with those machines, and denied knowing anything about how differences in electrodes, pulse durations and skin preparations can affect electric current. The Jacksons' argument that Dr. Priver should be able to testify because of his decades of experience and his membership in the American College of Obstetricians and Gynecologists is simply not credible in light of the standards established in *Daubert.* The trial court's holding that Dr. Priver's testimony was unreliable and thus was not admissible was not in error and was not an abuse of discretion.

■ The Jacksons also argue that the trial court's holding that were Dr. Priver to testify, any probative value of the testimony would be substantially outweighed by the risk of undue prejudice to Ghayoumi because of its speculative nature under KRE 401 and 403 was in error. This Court defers to the trial court's ruling that evidence should be excluded under KRE 401 and 403 unless there has been an abuse of discretion. *Barnett v. Commonwealth,* 979 S.W.2d 98, 103 (Ky.1998). Dr. Priver could not opine as to the most rudimentary science regarding conduction of electricity through the human body. He testified that the areas of scientific inquiry at issue in this case are "miles outside [his] area of expertise." Prejudicial testimony is "that which is unnecessary and unreasonable," which is exactly the type of testimony Dr. Priver would have offered at trial. *Partin v. Commonwealth,* 918 S.W.2d 219, 223 (Ky.1996) (*overruled on other grounds by Chestnut v. Commonwealth,* 250 S.W.3d 288 (Ky. 2008)). If he had been allowed to testify, Dr. Priver would have testified as an expert about pregnancy and miscarriages in general. He would not have testified as an expert about the conduction of electricity in the human body. Thus, any testimony about *this* pregnancy and *this* miscarriage

would be inherently based upon speculation and would only serve to confuse the jury on one of the essential elements of the Jacksons' claim: causation. We cannot conclude that the trial court's determination that Dr. Priver's testimony would have been more prejudicial than probative was an abuse of discretion. Therefore, we affirm the order excluding his testimony in its entirety.

Finally, the Jacksons argue that even without Dr. Priver's proposed expert testimony, they should have been allowed to proceed forward with their case. The Jacksons argue that the trial court failed to address genuine issues of fact that existed, and accordingly summary judgment was precluded.

The standard of review for summary judgment is well-known and oft-cited. Summary judgment functions to terminate litigation when it appears that the party opposing the motion cannot produce evidence at trial that would lead to a verdict in its favor. CR 56.03; *Steelvest Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Further, there must be no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996).

 In a medical malpractice case, such as the one at bar, a plaintiff must present proof that a healthcare provider's allegedly negligent act was the proximate cause of the injury alleged. *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky.App.1977). A plaintiff's burden is greater than proving a negligent act followed by an injury. *Id.* Particularly, causation in medical malpractice cases must be established by expert testimony. *Id.* (*citing Johnson v. Vaughn*, 370 S.W.2d 591 (Ky.1963)). Ordinarily, expert testimony is necessary to support a conclusion of causation in malpractice actions and the medical testimony must be

that an alleged negligent act probably caused the injury, and that a nexus between the alleged act and the injury is not merely possible. *Jarboe v. Harting*, 397 S.W.2d 775 (Ky.1965).

 In this case, with the exclusion of Dr. Priver's testimony, the Jacksons are left precisely with what the court in *Morris, supra*, said was insufficient to create a triable issue—the possibility of negligence followed by an injury. Further, the trial court has broad discretion to determine whether an expert was necessary to prove issues of medical-legal causation. *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 680–81 (Ky.2005). Here, the trial court's decision that an expert was necessary to establish a *prima facie* case of medical malpractice against Ghayoumi was well-reasoned and supported by substantial evidence. The Jacksons alleged that electricity applied to the human neck caused a human uterus to contract such that a miscarriage occurred. Proof that Ms. Jackson's miscarriage was caused by the electrical stimulation is a fact which must be proven through the use of an expert's testimony.

The Jacksons argue that material issues of fact existed to preclude summary judgment and point to issues such as where the electrodes were placed and the length of time the electrical stimulation treatment proceeded as being material issues of genuine fact. However, even if such issues existed, without a causation expert to testify that the electrical stimulation could likely have caused the miscarriage, all other issues are moot. A jury would be required to speculate as to causation in this case, and ultimately would not be able to determine proximate cause without a qualifying expert. Accordingly, based on the exclusion of the Jacksons' only medical expert, summary judgment was proper.

Discerning no reversible error, we affirm the judgments and orders of the Jefferson Circuit Court.

ALL CONCUR.