RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0204-MR

BARBARA ANN GIBSON,
EXECUTRIX OF THE ESTATE OF
BRADLEY GIBSON, AND ON
BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF
BRADLEY GIBSON                                                          APPELLANT


                         APPEAL FROM GRAYSON CIRCUIT COURT
v.                       HONORABLE KENNETH H. GOFF, II, JUDGE
                         ACTION NO. 17-CI-00119


SPRING VIEW HEALTH & REHAB
CENTER, INC. D/B/A SPRING VIEW
HEALTH & REHAB CENTER;
ADVENTIST HEALTH SYSTEM
SUNBELT HEALTHCARE
CORPORATION; ADVENTIST
HEALTH SYSTEMS/SUNBELT, INC.;
PAMELA GRAY; AND SUN BELT
HEALTH CARE CENTER, INC.                                                 APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND GOODWINE, JUDGES.

COMBS, JUDGE: This case arises from a summary judgment entered in a case alleging medical negligence and wrongful death. Barbara Ann Gibson, as Executrix of the Estate of Bradley Gibson, appeals the summary judgment of the Grayson Circuit Court entered in favor of Spring View Health & Rehab Center, Inc., ("Spring View"); Sunbelt Health Care Center, Inc.; Adventist Health Systems/Sunbelt, Inc.; Adventist Health System Sunbelt Healthcare Corporation; and Pamela Gray, in her capacity as administrator of Spring View. Gibson argues that the circuit court erred by concluding that she failed to show a causal connection between the decedent's care at Spring View and his subsequent death three weeks later. After our review, we affirm.

On August 12, 2016, Bradley Gibson was admitted to the intensive care unit at Twin Lakes Regional Medical Center (Twin Lakes or the hospital) upon the recommendation of his home healthcare provider. Bradley was in fragile health. He was suffering with advanced dementia; sepsis; acute congestive heart failure; chronic obstructive pulmonary disease (COPD) exacerbations; and renal failure. He remained hospitalized at Twin Lakes until he was stabilized one week later. The hospital's discharge summary indicated that Bradley continued to suffer with acute renal failure, acute congestive heart failure, COPD, cellulitis, and dementia; but the sepsis had resolved. Because Bradley required skilled care

-2-

following his discharge from the hospital, he was admitted directly to Spring View, a nursing facility located in Leitchfield, Kentucky, on August 19, 2016.

On August 31, 2016, Bradley was diagnosed with (likely) aspirational pneumonia by Dr. Daniel Butler. Dr. Butler prescribed antibiotics Levofloxacin and Zyvox -- both of which target a variety of bacterial infections. He also ordered that a sputum sample be obtained and cultured. Medical charts indicated that nurses administered the prescribed antibiotics but were unable to obtain a sputum sample. Although Bradley would cough up mucus, he swallowed before a sample could be collected. Critically significant to this case is the fact that the *nursing facility staff did not advise Dr. Butler that sputum could not be collected and that no culture would be available for review.* Bradley's condition improved, and he was discharged from Spring View on September 5, 2016, in a stable condition. There is no dispute that Bradley cleared the pneumonia that was diagnosed by Dr. Butler at Spring View.

At home, Bradley's primary care provider and home health care provider resumed his care. His underlying conditions continued to deteriorate, however. On September 24, 2016, Bradley became unresponsive. He was intubated by EMS personnel before being taken by ambulance back to the hospital in cardiopulmonary arrest. At the hospital, Bradley received cardiopulmonary

treatment and antibiotic treatment for pneumonia. Life support measures became necessary. Bradley died within twenty-four hours, never regaining consciousness.

On April 7, 2017, Barbara Ann Gibson, Bradley's widow, filed a civil action alleging medical negligence and wrongful death. Gibson alleged that the failure of Spring View employees to provide appropriate medical care caused Bradley to suffer an "accelerated deterioration of his health." To support her claim, Gibson identified Dr. Thomas Cumbo, an infectious disease expert.

During his deposition, Dr. Cumbo explained that his opinion was based upon a review of Bradley's medical records. Dr. Cumbo testified that a sputum culture "improves patient outcomes if a pathogen is identified and antibiotics can be tailored." He explained that a sputum sample should be obtained "within a day or two. Preferably that day." He indicated that a culture normally takes another one or two days. He testified that once a course of antibiotics has begun, however, "the utility of a sputum sample goes down."

Dr. Cumbo explained that patients with COPD are more likely than not to develop multi-drug resistant pathogens -- "It's common knowledge in medicine that folks with extensive COPD are chronically colonized with pseudomonas." He believed that Dr. Butler had sufficient information based on Bradley's medical history and symptoms to select the antibiotics that he prescribed *without* ordering a sputum collection and culture. Dr. Cumbo specifically agreed

-4-

that the antibiotics that Dr. Butler prescribed "did cover MRSA [Methicillin-resistant Staphylococcus aureus] and pseudomonas empirically"; and he agreed that the decision of Spring View to discharge Bradley on September 5, 2016, was also appropriate. With respect to events leading to Bradley's death, Dr. Cumbo explained that Bradley probably developed severe pneumonia within a day or two of his subsequent admission to the hospital on September 24, 2016, and that the pneumonia led to septic shock, then organ failure, and ultimately death.

Dr. Cumbo testified that if an aggressive antibacterial therapy had been initiated immediately upon Bradley's arrival at the hospital, it would have helped:

> He probably would have survived the sepsis -- the septic shock episode, or he had a better chance of surviving the septic shock episode, I should say. . . . No way to know, but there's a much better chance that he would have.

Critical to his opinion, Dr. Cumbo explained that Bradley "was given appropriate antibiotics [both at Spring View and at the hospital], but he wasn't given antibiotics that were appropriate for the organism that he ended up growing, which likely led to his death." He testified that "had [the hospital] known that [Bradley] had a multi-drug resistant pathogen, especially pseudomonas, then different antibiotics would have been given." Despite the fact that Bradley arrived at the hospital intubated and in cardiac arrest, Dr. Cumbo believed that "there would be ample opportunity within a reasonable time frame of admission to get past medical

records." And, if the Spring View staff had collected and cultured Bradley's sputum before antibiotics were administered on August 31, 2016, information relevant to his subsequent care three weeks later would have been available to any hospital staffer who inquired. Dr. Cumbo admitted that there was no indication that hospital staff attempted to acquire any such information at any point, however.

On May 13, 2020, Spring View filed a motion for summary judgment. The circuit court granted the motion in part, concluding as a matter of law that Gibson could not recover punitive damages, damages resulting from pain and suffering, or medical expenses. All claims against Adventist Health Systems/Sunbelt, Inc., and Adventist Health System Sunbelt Healthcare Corporation were dismissed. However, the court denied the remainder of the motion, explaining that it was unable to conclude that Spring View was entitled to judgment as a matter of law with respect to the negligence claims.

On November 9, 2021, Gibson filed a motion asking the court to reconsider its conclusions with respect to the damages sought. A final pretrial conference was held on December 16, 2021. By order entered on February 7, 2022, the circuit court denied Gibson's motion. Additionally, the court reconsidered its earlier conclusion that genuine issues of material fact precluded Spring View's motion for summary judgment. Reviewing the record, it concluded

that Gibson could not show a causal connection between Bradley's care at Spring View and his subsequent death. It reasoned as follows:

> In discussing [Bradley's] care at Spring View, Dr. Thomas Cumbo had only one (1) standard of care criticism: the failure to obtain a sputum culture as ordered, and the failure to notify the physician that the order was not completed. After careful review of Dr. Cumbo's deposition, the Court finds the following testimony in support of granting summary judgment on all claims:
>
> 1. Dr. Cumbo testified that the pneumonia from [*sic*]which [Bradley] succumbed to was a different pneumonia than the pneumonia [Bradley] developed, and was treated for, at Spring View.
>
> 2. Dr. Cumbo testified that [Bradley] "clinically improved" and agreed that [Bradley] was appropriately discharged [from Spring View].
>
> 3. Dr. Cumbo testified that had the sputum sample been obtained at Spring View, pseudomonas and staph aureus would "probably" have been present.
>
> 4. Dr. Cumbo agreed that Dr. Butler's empiric medication therapy covered the organisms that he believed would have grown on the culture had it been obtained. Dr. Cumbo's opinion was summarized in his deposition:
>
> > Q: I understand that you believe that if a culture would have resulted from Spring View, that information would have been available to Twin Lakes for its use having to do with what medications would have been given to [Bradley], fair?

A: Yes.

However, there is no evidence in the record that anyone at [the hospital] made any effort to learn if there was any type of prior culture, including the one that Dr. Cumbo testified should have been performed at Spring View. Dr. Cumbo further testified that the standard of care did not require Dr. Butler to even order a sputum sample, or for Dr. Butler to order a blood culture of [Bradley].

Dr. Cumbo identified multiple intervening factors that dilute any possible causal connection between the sputum sample/culture at Spring View and [Bradley's] subsequent care and death at Twin Lakes, were that testimony not inadmissible speculation. Dr. Cumbo testified that had it been known "that he [Bradley] had a multi-drug resistant pathogen, especially pseudomonas, then different antibiotics would have been given. So he [Bradley] wouldn't have been Levofloxacin and Zyvox, once again. He [Bradley] would have been given something presumably that the pseudomonas were sensitive to." (sic). First, there is no evidence that, had he been notified of the inability to obtain a sputum sample from [Bradley], Dr. Butler would have taken any further steps to obtain one at Spring View. Instead, Dr. Butler testified that had he been notified, there would have been no new orders. Second, the record is void of any evidence that anyone at Twin Lakes made any effort to learn whether there was a prior sputum culture at Spring View or attempted to contact [Spring View or Dr. Butler] to learn of any cultures that might have been performed. Thus, regardless of whether a sputum sample was obtained and cultured or not, it could not have had any impact on [Bradley's] care at Twin Lakes or on his outcome. Third, even had someone at Twin Lakes attempted to obtain information regarding [Bradley's] prior admission to Spring View, there is no evidence that they would have done so prior to [Bradley's] death. According to Dr. Cumbo, standard of care required Twin Lakes to contact prior medical providers within 24

-8-

hours of admission, and unfortunately, [Bradley] passed away within that same timeframe.

Assuming that information consistent with Dr. Cumbo's opinions as to the hypothetical results of a sputum culture at Spring View was provided within the short timeframe between [Bradley's] arrival at Twin Lakes in cardiopulmonary arrest and his death approximately 24 hours later, antibiotics specific to those bacteria could have been administered. Dr. Cumbo testified this would have given [Bradley] a better chance of surviving the septic shock episode, although he could not quantify that increased chance. He also agreed that such aggressive antibiotic therapy would have caused a progression in [Bradley's] renal failure, possibly requiring him to undergo dialysis which itself would have lessened his life expectancy.

Dr. Cumbo's testimony is insufficient to establish a proximate causal connection between the lack of sputum sample/culture at Spring View and [Bradley's] death three (3) weeks later from a different pneumonia and associated septic shock. This is the only purported breach of standard of care that Dr. Cumbo attempted to causally link to any claimed injury or damages, therefore, this matter must be dismissed.

(Citations omitted.) The court concluded that Spring View was entitled to judgment as a matter of law. Spring View's motion for summary judgment was granted, and the action against it was dismissed. This appeal followed.

On appeal, Gibson's arguments focus on the court's dismissal of her claims for punitive damages, pain and suffering, and medical expenses. She also contends that the trial court erred by concluding that she could not show a causal

-9-

connection between the failure of Spring View staff to collect and culture sputum and Bradley's subsequent death weeks later at the hospital.

We have reviewed and considered those portions of the record upon which Gibson relies in support of her contention that she can prove causation, and we are compelled to conclude that the trial court did not err by granting summary judgment. Because this conclusion is dispositive of the appeal, we do not address the separate arguments concerning damages.

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. Because summary judgment involves only questions of law and not the resolution of disputed material facts, we do not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Instead, we review the decision *de novo*. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

On appeal, Gibson contends that the trial court erred by concluding that her expert opinion testimony failed to raise a genuine issue of material fact with respect to the issue of causation. She argues that issues of fact surround the

---

[1] Kentucky Rules of Civil Procedure.

question of whether failing to collect and culture a sputum sample at Spring View likely had an impact on Bradley's subsequent care at the hospital. Spring View argues that it was entitled to summary judgment because Gibson presented no evidence to show that sputum could have been collected from Bradley or that Dr. Butler would have authorized it to be collected through an unreasonably invasive means; no evidence that hospital personnel would have requested and obtained, on a sufficiently timely basis, the results of a culture had one been performed at Spring View; nor evidence to indicate that had sputum been collected and cultured as ordered, it would have revealed the same bacteria as the sample cultured after Bradley's death.

In order to recover under a claim of negligence, a plaintiff must establish that the defendant owed him a duty of care; that the defendant breached that duty of care; and that the breach proximately caused the plaintiff's damages. *Lee v. Farmer's Rural Elec. Coop. Corp.*, 245 S.W.3d 209 (Ky. App. 2007) (citations omitted). Proximate cause is a necessary element of any medical malpractice claim. *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572 (Ky. 2019). The plaintiff must demonstrate that the medical professional's breach of the applicable standard of care was a proximate cause of the claimed injury. *Jackson v. Ghayoumi*, 419 S.W.3d 40 (Ky. App. 2012). In order to be a sufficient cause of an injury, the challenged act or omission must be a **substantial factor** in causing

the injury. *Bailey v. North American Refractories Co.,* 95 S.W.3d 868 (Ky. App. 2001). Proximate cause must be shown to a reasonable degree of medical probability rather than mere possibility or speculation. *Ashland Hosp. Corp., supra.*

We agree with Spring View that no genuine issue of material fact precludes summary judgment in this matter. Gibson cannot show that the failure of Spring View personnel to collect and culture Bradley's sputum was the legal cause of his death at the hospital three weeks later.

Dr. Cumbo's testimony shows that at Spring View, Dr. Butler had a sufficient basis upon which to develop a plan of treatment for Bradley. According to Dr. Cumbo, Dr. Butler's decision to prescribe antibiotics Levofloxacin and Zyvox -- aimed at fighting a variety of bacterial infections including MRSA and pseudomonas -- was appropriate empiric therapy. All agree that Bradley's condition improved and that he was properly discharged from Spring View. All evidence indicates that Bradley cleared the pneumonia. No evidence indicates that Bradley's treatment at Spring View was impacted by the failure of staff to collect and culture sputum. In fact, Dr. Butler indicated unequivocally that if he later learned that attempts to collect sputum through ordinary means had been unsuccessful, he would not have ordered that it be collected by a more invasive means. **The course of treatment would not have changed**.

-12-

Weeks later, Bradley developed pneumonia again. He quickly became so ill that he became unresponsive. There was a delay in contacting 911, and he arrived at the hospital in cardiopulmonary arrest. At the hospital, Bradley received cardiopulmonary treatment and antibiotic treatment for pneumonia. No evidence suggests that hospital staff was unaware of Bradley's underlying conditions and the likelihood -- given his poor state of health -- that he had developed multi-drug resistant pathogens. Dr. Cumbo never criticized the antibiotic treatment ordered at the hospital. Nevertheless, it was his opinion that a *more aggressive* antibacterial therapy at the hospital would have given Bradley a better chance of surviving septic shock. He believed that hospital staff would have made this choice had sputum been collected and cultured at Spring View weeks earlier so that the hospital staff could have inquired and received the results of the sputum culture upon Bradley's second admission to the hospital. This connection is based upon a high degree of speculation and falls far short of constituting proximate cause.

The pertinent facts are undisputed in this matter: without breaching his duty of care, Dr. Butler diagnosed Bradley with pneumonia and ordered a course of antibiotic treatment to begin before sputum could be captured or cultured. The introduction of antibiotics interrupted the ability to gather accurate information about the bacteria growing in Bradley's body. Despite the failure of

Spring View staff to collect sputum for culture and their failure to advise Dr. Butler of that fact, Bradley **was successfully treated** for pneumonia. Bradley developed pneumonia at home weeks later, became unresponsive, and suffered cardiopulmonary arrest before arriving at the hospital for treatment. Bradley's treatment at the hospital was appropriate. However, he died when life support measures were withdrawn within twenty-four hours of his arrival at the hospital.

It cannot be reasonably inferred from these facts that the alleged breach of the standard of care by Spring View staff was a substantial factor in bringing about Bradley's death. Even if we were to acknowledge that Spring View staff was negligent in failing to collect and culture the sputum and by failing to alert Dr. Butler of the issue, the evidence presented nonetheless is insufficient to show that the lack of a culture report was causally connected with Bradley's death. Absence of the report did not play a substantial role in the sad outcome of Bradley's hospitalization weeks later. Any nexus between the alleged breach of duty and damages sustained is insufficiently direct and distinct to provide a basis for liability as a matter of law. It remains at best a matter of conjecture and speculation.

Because there is no genuine issue of any material fact, the trial court did not err by concluding that Spring View was entitled to a judgment as a matter of law. Therefore, we affirm its entry of summary judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stephen M. Garcia
Louisville, Kentucky

BRIEFS FOR APPELLEE:

Ryan D. Nafziger
Joseph M. Effinger
Matthew A. Piekarski
Louisville, Kentucky