RENDERED: FEBRUARY 21, 2025; 10:00 A.M.
TO BE PUBLISHED

**OPINION OF DECEMBER 6, 2024, WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1490-MR

MARY MULLINS, INDIVIDUALLY
AND AS ADMINISTRATOR
OF THE ESTATE OF BILLY
MULLINS                                                                    APPELLANT


                    APPEAL FROM PERRY CIRCUIT COURT
v.          HONORABLE JAMES W. CRAFT, II, SPECIAL JUDGE
                        ACTION NO. 20-CI-00127



APPALACHIAN REGIONAL
HEALTHCARE, INC. D/B/A HAZARD
ARH; AMR MOHAMED, M.D.;
RAFIQUL ALAM, M.D.; SRINIVASA
APPAKONDU, M.D.; NAGESWARA
R. PODAPATI, M.D.; JOHN B.
WILLIAMS, APRN; ASHLEY B.
ELSWICK, APRN; JEFFREY CHASE
CORNETT, D.O.; VERONICA
CAUDILL-ENGLE, D.O.; AND
STACIE RITCHIE, PA-C                                                       APPELLEES

<u>OPINION AFFIRMING IN PART,</u>
<u>REVERSING IN PART, AND REMANDING</u>

** ** ** ** **

BEFORE: CETRULO, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE: The Appellant, Mary Mullins ("Mullins"), individually and as the Administrator of the Estate of Billy Mullins, appeals from the Perry Circuit Court's Orders granting Summary Judgment to the Appellee medical providers. The circuit court held that Mullins did not present evidence of medical negligence against the medical providers because she failed to produce adequate expert testimony. Having reviewed the record and the applicable law, we affirm summary judgment as to Srinivasa Appakondu, M.D.; Nageswara R. Podapati, M.D.; John B. Williams, APRN; Ashley Elswick, APRN; Amr Mohamed, M.D.; Rafiqul Alam, M.D.; and Appalachian Regional Healthcare, Inc., d/b/a Hazard ARH, but we reverse and remand for further proceedings as to Jeffrey Chase Cornett, D.O.; Veronica Caudill-Engle, D.O.; and Stacie Ritchie, PA-C.

## FACTUAL AND PROCEDURAL HISTORY

Mullins was married to Billy Mullins ("Billy"). Billy, age 67, suffered from a variety of medical ailments, including obesity, diabetes, chronic atrial fibrillation, seizure disorder, chronic obstructive pulmonary disease ("COPD"), and diastolic heart failure. On February 1, 2019, he was found

-2-

unresponsive in his home. He was admitted to Appalachian Regional Healthcare, Inc., d/b/a Hazard ARH ("Hazard ARH") after being transferred from another medical facility. Billy was in cardiac arrest when found, and he had been revived and intubated at the previous facility.

Billy was at Hazard ARH from February 1 through February 22, 2019. He remained on a ventilator until February 16 but then had to be re-intubated on February 21. During his time at Hazard ARH, Billy suffered from pneumonia, congestive heart failure, renal failure, tachycardia, anemia, and the development of decubitus ulcers.[1]

On February 22, 2019, Billy was transferred to Baptist Health Corbin Long Term Acute Care Hospital ("LTAC"). While at LTAC, his condition worsened. Billy's renal failure progressed, requiring him to undergo dialysis. He also received placements of both a tracheostomy tube and a gastrostomy tube.

Billy was transferred from LTAC to Baptist Health Lexington Hospital ("Baptist") on March 17, 2019. Billy had developed bacterial sepsis, allegedly from an infected dialysis catheter. While at Baptist, stage 3 decubitus ulcers[2] were documented. He remained at Baptist until April 2, 2019, when he was

---

[1] Commonly referred to as "bedsores" or "pressure sores."

[2] At this stage, the sore has progressed past the skin and into deeper tissue and fat and poses a high risk of infection.

transferred to Select Specialty Hospital in Lexington, Kentucky. Billy was then transferred to Salyersville Nursing Home on May 10, where he stayed until May 14. He was then emergently transferred to Paul B. Hall Regional Medical Center on May 14, then immediately to Pikeville Medical Center. Billy passed away at Pikeville Medical Center on May 16, 2019. He essentially died of multiorgan failure due to sepsis.

A medical malpractice suit was filed on February 3, 2020, by Billy's widow, Mullins. Mullins named forty-two defendants, both individual medical practitioners and medical facilities. Mullins also named "unknown defendants" working at the various medical facilities. A much smaller number remains as Appellees, as many defendants were dismissed for improper venue,[3] as they did not reside or provide care to Billy in Perry County.

The remaining defendants and now Appellees can be placed into a few categories. First, the facility Hazard ARH was named. Next is a group consisting of Dr. Srinivasa Appakondu, Dr. Nageswara R. Podapati, APRN John B. Williams, and APRN Ashley Elswick ("Cardiology defendants"). The next group contains Dr. Jeffrey Chase Cornett, Dr. Veronica Caudill-Engle, and PA-C Stacie Ritchie

---

[3] *See Copass v. Monroe County Medical Foundation, Inc.*, 900 S.W.2d 617 (Ky. App. 1995) (in a medical malpractice case, proper venue requires that, as to each defendant, the county where the suit is filed is the county of residence of the defendant or the place of injury).

("Hospitalists"). Dr. Amr Mohamed is a nephrologist. Finally, Dr. Rafiqul Alam is a pulmonologist.

The allegations in the Complaint are essentially repeated block quotes with a given defendant plugged in:

> That [Defendant] has held itself out to the general public as an exceptional medical care provider. The [Defendant] failed to provide said exceptional medical care to Plaintiff, Billy Mullins.
>
> That at all times relevant herein, the Plaintiff, BILLY MULLINS, was a patient of [Defendant]. The Defendant negligently and/or recklessly failed to meet the healthcare obligations of Plaintiff, BILLY MULLINS.
>
> That as a direct and proximate result of the [Defendants] negligent and/or reckless conduct, the Plaintiff, BILLY MULLINS, died.[4]

No additional facts or details were alleged in the Complaint. Several defendants for whom venue was proper filed motions to dismiss on various grounds, including failure to state a claim, failure to satisfy notice pleading standards, ineffective service, and statute of limitations.

The case progressed little over the first year. The Appellees filed multiple rounds of motions for summary judgment, most of them based on the lack or insufficiency of Mullins's disclosures of expert witnesses. Some Appellants

---

[4] Complaint with Demand for Trial by Jury, Record at 1-21.

-5-

filed motions to compel, asking the circuit court to require Mullins to specify what actions of the Appellees were negligent. For example, one such motion to compel was filed in September 2021, after Appellees received the following answers to interrogatories:

> INTERROGATORY NO. 3: State specifically and in detail your allegations against [Defendant], including but not limited to each and every act or omission by [Defendant], that you allege was negligent, careless, reckless, improper, or a deviation from the standard of care relative to the care or treatment of Billy Mullins as alleged in the Complaint, and any alleged causal connection to the injuries claimed in the Complaint. . . .
>
> ANSWER: Plaintiff herein is not a physician and cannot testify as to medical procedures; however, Plaintiff hereby refers counsel to the medical records of the decedent, Billy Mullins. Discovery is ongoing, and Plaintiff's experts have yet to be deposed.[5]

The circuit court entered a scheduling order on January 10, 2022, requiring Mullins to disclose her expert witnesses by November 14, 2022. After a status conference in August 2022, the circuit court entered a subsequent order, extending Mullins's expert disclosure deadline to January 15, 2023. Mullins did not provide any expert information by that later date. Again, Appellees filed motions for summary judgment. The day prior to the hearing on these motions,

---

[5] Exhibit 1, Motion to Compel, Record at 757-58.

held in late February 2023, Mullins finally served her expert disclosures, along with her response to the motions for summary judgment.

Mullins's tardy expert disclosure identified four experts:  an infectious disease physician, a nephrologist, an internal medicine physician, and a nursing expert.  Her disclosure attached reports from the three physicians but not the nursing expert.  She later served an amended disclosure in which the nursing report was attached.  Defendants renewed their motions for summary judgment, as they deemed Mullins's disclosures insufficient.

In August 2023, the circuit court granted the motions for summary judgment.  It appears that the circuit court signed a tendered order.  The basis of the summary judgment was that Mullins's expert disclosures lacked the requisite expert opinion to prove either breach of the standard of care or causation of injury for any of the Appellees.  The Order further stated that Mullins had failed to comply with the previous court order to disclose her experts by January 15, and the circuit court found no excusable reason for her failure to do so.  The court subsequently denied Mullins's motion to alter, amend, or vacate.  This appeal followed.

**STANDARD OF REVIEW**

"The standard of review of a trial court's granting of summary

judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.  Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted).  "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

> Thus, even though an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo*, *i.e.*, to determine whether the record reflects a genuine issue of material fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling.  In a medical malpractice action, where a sufficient amount of time has expired and the plaintiff has still "failed to introduce evidence sufficient to establish the respective applicable standard of care," then the defendants are entitled to summary judgment as a matter of law.  The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion.

*Love v. Walker*, 423 S.W.3d 751, 756-57 (Ky. 2014).

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004).

## ANALYSIS

As a preliminary matter, several Appellees have noted that Mullins's brief does not comply with the Kentucky Rules of Appellate Procedure ("RAP"). It lacks a preservation statement, which is required by RAP 32(A)(4), and it does not contain a single citation to the record as required by RAP 32(A)(3). While no Appellee has explicitly requested that this Court strike the brief and dismiss the appeal, it would be within our discretion to do so. *See Commonwealth v. Roth*, 567 S.W.3d 591, 593 (Ky. 2019). Dr. Alam has asked that we review for palpable error only, as Mullins did not illustrate if and where the issues were preserved for our review.

"When an appellate advocate fails to abide by the appellate briefing rules, this Court has the option to: (1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions; or (3) to review the issues raised in the brief for manifest injustice only, if the briefing deficiency pertains to the appellant's statement of preservation of error." *Swan v. Gatewood*, 678 S.W.3d 463, 469 (Ky. App. 2023) (citation omitted), *review denied* (Dec. 6, 2023).

However, "how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

The sparse Appellant brief still makes it clear that the objection to the summary judgment was because the expert disclosures were sufficient. And the briefs in response also address this issue. The review of these expert reports is not onerous, and we also note an overlooked concession in the record, which we will address later, and which merits consideration. We will with some reluctance disregard the briefing failures and proceed with our review.

Mullins argues the circuit court erred in granting summary judgment because the expert testimony she provided was adequate to create a genuine issue of material fact. She argues her experts were qualified to render a medical opinion that the care Billy received violated the standard of care and caused his injuries.

In a medical negligence case, a plaintiff must prove the applicable medical standard of care, a breach of that care, and an injury resulting from that breach of care. *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2010). In order to survive summary judgment, a plaintiff must present a genuine issue of material fact for every element. *See Andrew v. Begley*, *supra*, at 170.

A party's "burden of proof at the trial is greater than merely proving a negligent act followed by injury. There must be proof that the negligent act was the proximate cause of the injury. Negligence in medical malpractice cases must

be established by expert testimony unless negligence and injurious results are so apparent that a layman with general knowledge would have no difficulty recognizing it." *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky. App. 1977) (citations omitted). "[T]he medical testimony must be that the causation is probable and not merely possible." *Id.* Negligence cannot be assumed merely from a poor outcome of a patient. *Meador v. Arnold*, 94 S.W.2d 626, 631 (Ky. 1936).

"Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship*, *supra*, at 670. "[T]he lack of expert testimony is truly a failure of proof [for which] a summary judgment is appropriate." *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017) (internal quotation marks and citation omitted).

In order to survive summary judgment, Mullins had to disclose her experts, and the basis of their opinion. Kentucky Rules of Civil Procedure ("CR") 26.02(4)(a)(i) states:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

It is not the qualifications of Mullins's experts that are at issue in this matter but rather the adequacy of their opinions. "A generalized statement outlining a broad subject matter about which an expert *may* testify does not sufficiently apprise the other party of the information needed to prepare for trial as contemplated and mandated by the notice requirements of CR 26.02(4)(a)." *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393-94 (Ky. App. 2004) (emphasis in original).

We must remember that from his initial admittance to the hospital to his death, Billy was treated by many medical professionals in multiple medical facilities. At the time of summary judgment, there were still nine individual medical practitioners and one hospital named as defendants. To prove liability, Mullins must show that *each defendant* both violated the standard of care and that the violation caused Billy's injuries. *Jewish Hospital & St. Mary's Healthcare, Inc. v. House*, 563 S.W.3d 626, 631 (Ky. 2018). Therefore, in order to survive a summary judgment motion by each defendant, Mullins had to disclose expert testimony that was specific to each defendant. To analyze further, we must look at what Mullins's experts actually stated in their reports.

As previously referenced, Mullins produced reports of four purported medical experts. Three of these four reports do not reference any of the individual medical practitioner Appellees by name or by specialty. These three reports make

very general statements that there was a violation of standards of care. For example, in the report by Mullins's internal medicine expert, it states "it is my preliminary opinion that [Hazard ARH], its staff, including nursing staff, and all other defendants failed to comply with the applicable standards of care in the treatment of Mr. Mullins, contributing to his poor recovery from his illness."[6] These types of statements are insufficient to meet the requirements of CR 26.02. *See Meade v. Dvorak*, 571 S.W.3d 585, 588 (Ky. App. 2018).

Mullins repeatedly argues that the reports state "all defendants" violated the standard of care, and this is sufficient to overcome summary judgment for all Appellees. This broad statement is inadequate. *See Savage v. Three Rivers Medical Center*, 390 S.W.3d 104, 118-19 (Ky. 2012). In order to defeat summary judgment against a particular defendant, an expert must state that defendant breached the standard of care and that breach led to the injury. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 74 (Ky. 2010).

Even reading the experts' reports very generously, they make no particularized statement that the Cardiology defendants, Dr. Mohamed (a nephrologist), or Dr. Alam (a pulmonologist) breached any standard of care. Likewise, while the nursing expert makes general statements that the nursing staff at Hazard ARH violated the standard of nursing care, she did not make any

---

[6] Report of Thomas W. Miller, M.D., FHM, Record at 1285.

references as to causation of Billy's injuries and subsequent death. She also did not mention any specific nurse, any specific wrongdoing, or a particular timeframe in which these errors occurred. It is clear these Appellees were entitled to summary judgment, as Mullins was unable to raise a genuine issue of material fact as to these Appellees.

Mullins insists it was Appellees' duty to take her experts' depositions prior to the granting of any summary judgment. There is no such rule. It is not the duty of defendants to undergo considerable expense and inconvenience to flesh out obviously inadequate expert disclosures by taking depositions.

The Appellees had been requesting more specific details of Mullins's allegations of negligence since the filing of the Complaint, and no further details were provided until Mullins filed her late expert disclosure. The circuit court did not entertain summary judgment until three years after the case was filed. While Mullins did finally file an expert disclosure, she did so approximately a month after the circuit court's order required her to do so.

We note that the summary judgment stated that the failure to disclose by the January 15 deadline was one reason for granting the summary judgment. We need not address the discretion of the circuit court to dismiss for failure to abide by a proper deadline. The record here clearly shows that the circuit court gave Mullins more time to provide the disclosures and encouraged

supplementation. Because of this extension, it was no longer appropriate to enforce the deadline.

On this record, it was not an abuse of discretion by the circuit court to grant summary judgment when it did. "The discovery of the substance of an expert witness's expected testimony is essential to trial preparation." *Clephas*, *supra*, at 394. The statements provided were not adequate for most of the Appellees, against whom no specific criticism was stated, to prepare a defense for trial, and the circuit court had given Mullins more than enough time to provide this information.

While most of the Appellees were not specifically referenced in any expert report, the report by Mullins's nephrology expert does specifically refer to the care provided by named Hospitalists and notes particular actions and inactions that the expert believes violated the applicable standard of care, specifically in the context of prevention and treatment of bedsores. As to causation, the expert opined that Billy died as a result of bacterial sepsis. The area where the port had been placed for dialysis was clearly infected. The port was impacted by an advanced bedsore located in the same area.

Still, the expert must tie the breaches and even cause in fact of an injury with an opinion of proximate causation. To survive summary judgment, the expert must at least state that the breaches of the standard of care caused the injury within a medical degree of medical probability. *See Rogers v. Sullivan*, 410

S.W.2d 624, 628 (Ky. 1966). In this case, the expert offered the arguably higher level of medical certainty:

> Lastly, it would appear to a reasonable degree of medical certainty that the hospital admission of Mr. Mullins at Hazard ARH from 4-22 February 2019 had set the foundation for the future multiple complications at multiple facilities ultimately leading to his death. The inaccurate and frankly false daily documentation, lack of meticulous daily physical examinations, inadequate care as described above, and inappropriate transfer to Corbin LTAC were all markedly below the standard of care. Measure [sic] such as the following were not administered (per the records provided for my review) and would have to a reasonable degree [of] medical certainty altered the further deterioration after transfer to multiple hospitals and the ultimate death of the patient.

While we have quoted at some length from the expert report, we note the importance of reviewing a report in its entirety, rather than selecting specific phrases, when the causation opinion is being evaluated. The expert opinion at issue is four pages in length, single spaced, and contained numerous specific and troubling comments about the care provided by the Hospitalists.

We do not envy Mullins's task to establish causation with the extensive history of Billy's complex treatment by numerous medical providers in multiple facilities. But the overall opinions rendered in one expert report are sufficient to create a genuine issue of material fact as to the Hospitalist Appellees. It is noteworthy that counsel for the Hospitalists during the final hearing on the motions for summary judgment basically conceded that there was adequate expert

-16-

disclosure to move forward against the Hospitalists.[7]  We therefore reverse the summary judgment granted to the Hospitalists only, and remand for further proceedings against those Appellees.

**CONCLUSION**

Because Mullins presented adequate expert testimony to create a genuine issue of material fact regarding the Hospitalist Appellees, we REVERSE and REMAND as to those Appellees.  As for the remaining Appellees, we AFFIRM the orders of the Perry Circuit Court granting summary judgment.

ALL CONCUR.

---

[7] Hearing of July 27, 2023 at 10:56:50:  "I am just interested in a ruling on this – these folks, I'm in it for the long haul, these folks are hoping to get out.  I just want to keep the case moving, and so I would appreciate a ruling on this.  I think we all would, just so the folks that are definitely going to stay in so we can keep advancing with the experts' discovery."

BRIEFS FOR APPELLANT:

Glenn M. Hammond
Pikeville, Kentucky

BRIEF FOR APPELLEES
SRINIVASA APPAKONDU, M.D.;
NAGESWARA R. PODAPATI, M.D.;
JOHN B. WILLIAMS, APRN; AND
ASHLEY ELSWICK, APRN:

Kenneth Williams, Jr.
Dustin C. Haley
Ashland, Kentucky

BRIEF FOR APPELLEE
APPALACHIAN REGIONAL
HEALTHCARE, INC. D/B/A
HAZARD ARH:

John O. Hollon
Chadwick A. Wells
Betsy R. Catron
Lexington, Kentucky

BRIEF FOR APPELLEES JEFFREY
CHASE CORNETT, DO; STACIE
RITCHIE, PA-C; AND VERONICA
CAUDILL-ENGLE, DO:

Stephen S. Burchett
Michael G. Erena
Lexington, Kentucky

BRIEF FOR APPELLEE AMR
MOHAMED, M.D.:

Clayton L. Robinson
Shannon M. Naish
Lexington, Kentucky

BRIEF FOR APPELLEE RAFIQUL ALAM, M.D.:

Katherine Kerns Vesely
Louisville, Kentucky